IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 18, 2006 Session

## STATE OF TENNESSEE v. LESLIE A. PRYOR

**Appeal from the Criminal Court for Pickett County**
**No. 816     Leon Burns, Jr., Judge**

---

**No. M2005-01429-CCA-R3-CD - Filed August 31, 2006**

---

The defendant, Leslie A. Pryor, was convicted of two counts of aggravated assault with a deadly weapon, one count of theft over $10,000, one count of attempted voluntary manslaughter, one count of felony evading arrest, one count of reckless endangerment with a deadly weapon, three counts of reckless endangerment, and one count of criminal impersonation. The trial court merged the reckless endangerment and attempted voluntary manslaughter convictions with the greater charge of aggravated assault, and the defendant was given an effective sentence of forty-two years in the Department of Correction. On appeal, the defendant argues that the evidence is insufficient to support his convictions for aggravated assault. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which ALAN E. GLENN, J., and J.S. DANIEL, SR. J., joined.

John E. Appman, Jamestown, Tennessee, for the appellant, Leslie A. Pryor.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William Edward Gibson, District Attorney General; and Owen G. Burnett, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's driving a stolen vehicle and attempting to flee from Tennessee Highway Patrol troopers at a driver's license roadblock. On May 30, 2003, the defendant was driving a stolen Ford F-350 truck when he encountered Tennessee Highway Patrol troopers at a roadblock on Highway 111 in Pickett County. The defendant was questioned, produced a false identification, and, after being detained, decided to flee the scene in the truck. In the process of fleeing, the defendant's vehicle made contact with two highway patrolmen. Gunshots were fired, a vehicle chase ensued, and officers detained the defendant in Kentucky, after he had suffered gunshot wounds. A Pickett County grand jury indicted the defendant on two counts of aggravated

assault with a deadly weapon, one count of theft of property over $10,000, four counts of attempted second degree murder, one count of evading arrest, one count of reckless endangerment, and one count of criminal impersonation. After a trial on all the charges, a Pickett County jury found the defendant guilty of two counts of aggravated assault with a deadly weapon, a Class C felony; one count of theft over $10,000, a Class C felony; one count of attempted voluntary manslaughter, a Class D felony; one count of felony evading arrest, a Class D felony; one count of reckless endangerment with a deadly weapon, a Class E felony; three counts of reckless endangerment, a Class A misdemeanor; and one count of criminal impersonation, a Class B misdemeanor. At sentencing, the trial court merged the convictions for reckless endangerment and attempted voluntary manslaughter with the two convictions for aggravated assault. The defendant was sentenced as a Range II, multiple offender to an effective total of forty-two years in the Department of Correction, including ten years for each of the two aggravated assault convictions, to be served consecutively.

At trial, twelve witnesses testified for the state, including the five Tennessee Highway Patrol troopers present at the scene of the incident on May 30, 2003. Trooper Jeff Cook testified that he, Lieutenant Ottie Shoupe, Sergeant Michael Allen, Trooper Darryl Winningham, and Trooper Alan Lee had set up the roadblock at mile marker 11 on Highway 111 around 8:30 p.m. Trooper Cook was checking vehicles in the northbound lane when the defendant approached at approximately 8:45 p.m. in a 2001 Ford F-350 "dually" pick-up truck. Trooper Cook explained that a dually truck is one with dual rear tires on each side, and he described the truck as a "heavy truck." When Trooper Cook asked to see the defendant's identification, the defendant provided an Ohio driver's license bearing the name Kevin Johnson. Trooper Cook noticed that the tags on the truck were expired, and when he ran a computer check on the truck, he received information that it was possibly a stolen vehicle. Trooper Cook informed Trooper Alan Lee of the situation and that he was waiting for confirmation on whether the truck was stolen.

Trooper Cook testified that while waiting for the confirmation, he heard gunshots and yelling. He saw the Ford truck speeding past him and toward Lt. Ottie Shoupe, who was checking traffic in the southbound lane of the highway. He stated, "The truck appeared to be going toward him. Lieutenant Shoupe had traffic backed up on that side of the road, he had nowhere else to go . . . ." He stated that he saw Lt. Shoupe draw his weapon as the truck continued northbound at a high rate of speed. Trooper Cook estimated that the truck was going in excess of ninety miles per hour. He testified that the defendant did not reduce his speed as he took a left turn at a stop sign onto Highway 127 toward Kentucky. Trooper Cook followed the defendant in his own vehicle, and the defendant was soon detained in Kentucky, after having fled the vehicle on foot.

Sergeant Michael Allen testified that he was assisting with the roadblock when Trooper Lee informed him that the defendant was driving a possibly stolen vehicle. Sergeant Allen stated that he and Trooper Lee approached the defendant's truck to conduct an investigation. He testified that in addition to the defendant, there were two passengers in the truck. He said he opened the driver's door and asked the defendant to turn off the vehicle and step outside. The defendant initially did turn off the vehicle but then quickly grabbed the door, slammed it shut, and restarted the truck. Sergeant Allen stated that when the defendant shut the door, he stepped up on the running board of the truck,

reached through the window, and attempted to restrain the defendant. The defendant drove onto the roadway and began accelerating the vehicle while Sgt. Allen was on the running board. He testified that he jumped off the running board because he felt he was in danger.

Sergeant Allen testified that he saw the truck going toward Trooper Lee and that he saw Trooper Lee falling backward while discharging his weapon. He said he did not see whether the truck hit Trooper Lee. He said that he saw the truck accelerating toward Lt. Shoupe and that he yelled to Lt. Shoupe to get his attention. Sergeant Allen described the truck as being "at maximum acceleration." He stated that the truck passed Lt. Shoupe and that he went to check on Trooper Lee and the others. He then went with Trooper Lee in pursuit of the defendant. On cross-examination, Sgt. Allen testified that it was a "matter of seconds" between the time the defendant began accelerating while on the shoulder of the road and the time he traveled to the location where Lt. Shoupe was standing in the middle of the road. On re-direct examination, Sgt. Allen testified that he believed that the defendant posed a threat of serious bodily injury to the officers and others.

Lieutenant Ottie Shoupe testified that he was the troop commander in charge of the roadblock. He testified that he was checking vehicles in the southbound lane when he heard a commotion that drew his attention to the northbound lane. He said he heard yelling, gunfire, and a vehicle accelerating. He stated that when he turned around, he saw a truck coming directly toward him. He testified that he had nowhere to go and that he leaned his back as far as he could against the vehicle in the southbound lane. Lieutenant Shoupe stated, "I felt I was going to die right then. I just couldn't go nowhere." While leaning against the vehicle, Lt. Shoupe drew his weapon and fired shots at the defendant. He stated that the truck struck his left thigh and knee as it passed him. After the truck passed him, he ran to Trooper Lee, whom he had seen on the ground. He then got into his patrol car and followed Trooper Cook, who was pursuing the defendant.

On cross-examination, Lt. Shoupe testified that he was standing in the middle of the road, on the yellow line dividing the two lanes, and that the defendant passed him in the northbound lane without hitting the car against which he was leaning. He also testified that the injury to his leg and knee was not severe and that it did not affect his ability to walk. On re-direct examination, when asked why he fired shots at the defendant, Lt. Shoupe stated, "I felt my life was in jeopardy. I didn't have any place to go anyway. And I knew that one of my officers was down. . . . I had to neutralize the threat to other people on up the road . . . ."

Trooper Darryl Winningham testified that he was working at the Highway 111 roadblock. He testified that he had just issued a citation and was putting his ticket book back in his patrol car "when everything happened." He stated that he saw Sgt. Allen on the running board of the truck and reaching into the truck when the vehicle drove onto the roadway. He said that he saw Trooper Lee lying on the ground and that he thought the defendant had run over Trooper Lee. He said the vehicle was "accelerating fast" northbound in the direction of Lt. Shoupe. He testified that the defendant proceeded north in the middle of the road between the vehicles stopped on both sides of the highway. After the truck passed Lt. Shoupe, Trooper Winningham went to his vehicle to follow the defendant.

Trooper Alan Lee testified that he was on his way to assist Lt. Shoupe with southbound traffic when Trooper Cook informed him that the defendant was driving a possibly stolen vehicle. Trooper Lee informed Sgt. Allen, and the two of them walked toward the defendant. Trooper Lee testified that he was standing behind Sgt. Allen while Sgt. Allen instructed the defendant to turn off the truck and step outside. He stated that he saw the defendant grab the door, shut it, and restart the engine while Sgt. Allen stepped onto the running board and reached through the window of the truck. He said the truck accelerated suddenly and struck him, causing him to fall in the path that the truck was moving. He testified that he fell onto the pavement and reached for his gun with his right hand during the fall. He saw Sgt. Allen stepping off the running board as the truck gained momentum. He testified that he feared that the truck would run over him and that he tried to roll away from the direction of the truck. He said he fired shots at the truck. He stated that the truck made a sharp left turn onto the roadway and proceeded in the direction of Lt. Shoupe. The state introduced into evidence Trooper Lee's duty belt, which was damaged as a result of his fall onto the road, and pictures of injuries to Trooper Lee's arm and elbow from impact with the truck and the pavement. Trooper Lee also testified that there was a grassy embankment off the shoulder of the road that the defendant could have driven through to flee the scene and avoid the crowded roadway.

Sergeant Bobby Lynn Beard, an accident reconstructionist with the Tennessee Highway Patrol, testified as to acceleration marks and scuff marks found during his investigation of the scene. Sergeant Beard said that the acceleration marks indicated that the defendant made a sharp left turn and that they would have been caused by "mashing on the gas pedal." He also testified that the truck weighed approximately 7500 pounds.

The defendant testified that he did not intend to harm any of the officers and that his only concern was fleeing. He admitted that he knew the truck had been fraudulently obtained and that he gave Trooper Cook a false identification in the name of Kevin Johnson. He said he also had warrants out for his arrest in Kentucky and had several aliases. He said he was stopped by Trooper Cook, who asked him to pull over to the side of the road. He said he became nervous as he saw Trooper Cook talking to Trooper Lee and then Trooper Lee talking to Sgt. Allen. He stated that when Sgt. Allen approached him and asked him to turn off the truck and step outside the vehicle, he debated whether he should stay or flee. He stated that he decided to flee but that "there really wasn't no time to think. It was all just reaction." He shut the door, started the truck, turned the steering wheel as far as he could, and attempted to shift the truck into gear with his foot on the gas pedal. He successfully shifted the truck into gear on the third try, while Sgt. Allen was reaching in the truck. He testified that as he turned the truck into the road, the side of the truck hit Trooper Lee. He said that no one was standing in front of the truck and that he did not intend to hit Trooper Lee. The defendant stated that as Sgt. Allen was stepping off the running board of the truck, Trooper Lee began firing at him. The defendant reiterated that he did not intend to hit Trooper Lee: "Like I said, there was no intention to hit or run over him, and if I wanted to do that, I had the opportunity right then. He was a sitting duck. If that was my intentions, I could have done that."

The defendant testified that when he drove onto the road, Lt. Shoupe was approximately fifty to seventy-five yards away. He testified that he drove the truck down the center of the lane, and not

directly toward Lt. Shoupe. He stated that Lt. Shoupe began firing at him and that he never intended to hit Lt. Shoupe: "If my intention was to kill that man, all I had to do was run into that truck [behind Lt. Shoupe], or side-swipe that truck, and he would have been a paint job on the side of that truck. . . . I could have hit him. But I ain't trying to hurt nobody. I'm trying to get away."

On cross-examination, the defendant agreed that the truck could be used as a deadly weapon and that either Trooper Lee or Lt. Shoupe could have been killed by the truck. He also stated that he knew he had hit Trooper Lee but that he did not think he had run over him. He also said he believed that he did not hit Lt. Shoupe. He stated that he had hoped when he fled to drive the four-wheel drive truck up a hill that the officers could not follow. He stated that he was not driving ninety miles per hour through an intersection but that he was traveling between fifty and seventy miles per hour. The defendant admitted that he recklessly endangered the life of Sgt. Allen when he drove while Sgt. Allen was standing on the running board, that he used a false identification, that he knew the truck was stolen, and that he evaded arrest. He maintained, however, that he had no intention to assault or hurt the troopers. The defendant also admitted that he made his living "by doing frauds and cons" and that he would lie if he knew it would keep him out of prison. He added, however, that he was not lying in his testimony.

The jury found the defendant guilty of aggravated assaults with a deadly weapon of Lt. Shoupe and Trooper Lee, of attempted voluntary manslaughter of Trooper Lee, of reckless endangerment with a deadly weapon of Sgt. Allen, of two counts of reckless endangerment of Lt. Shoupe, and of one count of reckless endangerment of Trooper Lee. In addition, the jury found the defendant guilty of theft of property over $10,000, felony evading arrest, and criminal impersonation.

The defendant contends that the evidence is insufficient to support his convictions for aggravated assault. Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

In relevant part, our code defines aggravated assault as follows: "A person commits aggravated assault who: (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon." T.C.A. § 39-13-102(a). Section 39-13-101 defines assault as, in part, "Intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury." The indictment charged that the defendant "did unlawfully and intentionally or knowingly cause" Lt. Shoupe and Trooper Lee "to reasonably fear imminent bodily injury while utilizing a deadly weapon, to wit: a motor vehicle."

The defendant contends that the evidence is insufficient to prove aggravated assaults, and he argues that his intention was to evade arrest, not to assault or injure anyone. He also argues that he did not use the truck as a deadly weapon and that neither Lt. Shoupe nor Trooper Lee sustained serious bodily injury. The state counters that the evidence was sufficient to convict the defendant of aggravated assault with a deadly weapon because a motor vehicle can constitute a deadly weapon, Lt. Shoupe and Trooper Lee feared for their safety, and the defendant had, at least, a knowing mental state.

We conclude that the evidence presented at trial is sufficient to establish beyond a reasonable doubt that Lt. Shoupe and Trooper Lee reasonably feared imminent bodily injury as a result of the defendant's operation of the truck. Both victims testified that they feared for their safety as the large truck approached and hit them. The extent of their injuries is irrelevant because the charges were based on their reasonable fear of imminent bodily injury.

We also agree with the state that a motor vehicle can be a "deadly weapon" for purposes of committing an aggravated assault. "Deadly weapon" is defined, in part, as, "Anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(a)(5)(B). This court has held that a motor vehicle can be considered a "deadly weapon." See State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995). The defendant does not deny that the truck was capable of causing death or serious bodily injury. The defendant misapprehends the law when he argues that if he did not intentionally use the truck to harm anyone, it cannot be considered a deadly weapon. Rather, if the defendant is charged with intentionally or knowingly committing aggravated assault, the state must show that the use of a motor vehicle as a deadly weapon was either intentional or knowing. Tate, 912 S.W.2d at 787.

The defendant's primary argument is that the state did not prove that he had the requisite mental state to be convicted of aggravated assault. To convict the defendant for the crime charged, the state must have proven that the defendant acted intentionally or knowingly when he caused Lt. Shoupe and Trooper Lee to fear imminent bodily injury by his operation of the truck. Our code explains:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

T.C.A. § 39-11-106(a)(20). The defendant admitted that he knew Trooper Lee was standing nearby when he suddenly accelerated the truck and attempted to make a sharp turn to enter the roadway. He said he knew the length and size of the truck would make the turn difficult. He admitted that he knew Trooper Lee "was a sitting duck" when he started to pull onto the road. Although the defendant testified that he did not aim the truck toward Lt. Shoupe after he pulled onto the road, five

eyewitnesses testified for the state that the defendant's vehicle was headed directly toward Lt. Shoupe. Lt. Shoupe testified that the truck was coming toward him and barely passed him as it grazed his leg. The state's evidence could establish that the defendant knew that he was driving an approximately 7500-pound truck at a high rate of speed, in a crowded area, and in such a manner that could have seriously injured or killed someone. Even if the defendant acted with the primary intent of fleeing and not of assaulting the troopers, a reasonable jury could have found beyond a reasonable doubt that the defendant knowingly used the truck as a deadly weapon and knowingly caused Lt. Shoupe and Trooper Lee to fear imminent bodily injury. We hold that the evidence was sufficient to support the defendant's convictions for aggravated assault.

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____

JOSEPH M. TIPTON, JUDGE